UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LORRI GIRARD-QUICK,<br><br>  Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>  Defendant. | No. CV-08-3004-CI<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND DIRECTING ENTRY OF<br>JUDGMENT FOR DEFENDANT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 14, 17.) The parties have consented to proceed before a magistrate judge. (Ct. Rec. 4.) Attorney D. James Tree represents Lorri Girard-Quick (Plaintiff); Special Assistant United States Attorney David Burdett represents the Commissioner of Social Security (Defendant). After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment in favor of Defendant.

Plaintiff filed for disability insurance benefits (DIB) under Title II of the Social Security Act on July 22, 2004. (Tr. 55.) She alleged disability due to carpel tunnel syndrome of the right hand and right shoulder and arm injury related problems, with an onset date April 6, 2001. (Tr. 120, 121.) Following a denial of

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 1

benefits and reconsideration, a hearing was held before Administrative Law Judge (ALJ) Paul Gaughen. (Tr. 46-55, 452-76.) The ALJ denied benefits; review was denied by the Appeals Council. (Tr. 12-23, 4-6.) This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are detailed in the transcript of proceedings (Tr.) and are briefly summarized here. Plaintiff was 47 at the time of the hearing, with a ninth-grade education. (Tr. 457.) She was single and had one child. (Tr. 300.) She had work experience as a house cleaner and fruit sorter. She is right-hand dominant. Her right shoulder was injured on the job as a fruit packer, and the injury was aggravated while she was working as a housekeeper, causing pain in her right shoulder, back, arm and hand. (Tr. 458.) She had two surgeries on her shoulder after it was injured, and a successful carpel tunnel release in 2002. (Tr. 193, 212.) She testified she continued to have problems with her shoulder and hands, including pain, restricted range of motion and weakened grip that caused her to drop things. She testified her left hand was beginning to give her problems also. (Tr. 460-61.) She stated she had problems sleeping and no energy four or five days per month. (Tr. 462.) She testified she cooked and cleaned the house, but these activities took her longer than they did before her injuries. (Tr. 463.)

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff's date of last insured for DIB was June 30, 2005. He determined she had not engaged in substantial gainful activity since the alleged onset date through the date of last

insured. (Tr. 17.) At steps two and three, the ALJ found Plaintiff had the severe impairments of "adhesive capsulitis of the right shoulder post surgery and right side carpal tunnel syndrome by history," but these impairments did not meet the requirements of 20 C.F.R. Part 404, Subp. P, Appendix 1 (Listings). (Tr. 17-18.) At step four, ALJ Gaughen made the following residual functional capacity (RFC) finding:

> [T]hrough the date last insured, the claimant has the residual functional capacity to perform light work, which involved occasional lifting less than 20 pounds with her right upper extremity, frequent lifting or carrying of 10 pounds with her right upper extremity, sitting for 6 hours and standing/walking for 6 hours in an 8 hour workday and having limited use of her right upper extremity for repetitive grasping, holding and turning objects (i.e., gross manipulation) and reaching in all directions. Her grip is intact with diminished strength. Her left upper extremity is unrestricted.

(Tr. 18.) Based on the record and testimony from a vocational expert (VE), the ALJ determined Plaintiff was unable to perform her past relevant work. (Tr. 22.) At step five, the ALJ considered VE testimony and record evidence and concluded Plaintiff could perform other jobs in the national economy, such as charge account clerk and call-out operator and, therefore, was not "disabled" as defined by the Social Security Act. (Tr. 22-23.)

**ISSUES**

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) improperly rejected Plaintiff's pain testimony; (2) failed to fully develop the record; and (3) failed to meet the Commissioner's burden at step five. (Ct. Rec. 15 at 8.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**DISCUSSION**

**A.   Credibility**

The ALJ summarized Plaintiff's testimony and found "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 20.) Plaintiff contends the ALJ's reasons for discounting her testimony are neither specific nor legally sufficient. She argues her pain testimony should be credited and an immediate award of benefits should be ordered. (Ct. Rec. 15 at 11-14, 18-19.)

Credibility is a factor considered in the evaluation of medical evidence when there is inconsistency between a diagnosed condition and a claimant's subjective complaints. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

> An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A . . . . This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce <u>some</u> pain; many medical conditions produce pain not severe enough to preclude gainful employment.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). As explained by the Commissioner in his policy Ruling, the ALJ need not totally reject a claimant's statements; he may find the claimant's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 5

statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *Social Security Ruling (SSR) 96-7p.*

> For example, an adjudicator may find credible an individual's statement that the abilities to lift and carry are affected by symptoms, but find only partially credible the individual's statements as to the extent of the functional limitations or restrictions due to symptoms; i.e., that the individual's abilities to lift and carry are compromised, but not to the degree alleged.

*Id.*

The ALJ must engage in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the claimant must produce objective medical evidence of an underlying "impairment," and must show that the impairment, or a combination of impairments, could reasonably be expected to produce pain or other symptoms. *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant. *Smolen,* 80 F.3d at 1281-82. If there is no affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting Plaintiff's pain and/or symptom testimony. *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001); *Smolen*, 80 F.3d at 1283-84. The ALJ may consider the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness; inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct; [claimant's] daily activities; [his/her] work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If

the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan*, 169 F.3d at 600.

Plaintiff appears to argue the ALJ did not meet the second prong of the *Cotton* test, and found only that her subjective complaints were not supported by objective evidence. This argument is unpersuasive. After summarizing and interpreting the medical evidence, the ALJ specifically identified Plaintiff's allegations that she could not lift more than 40 pounds,[1] she drops things with her right hand (indicating poor grip), it takes longer to do things like puzzles and tasks, her pain caused her to lie down at unpredictable times on bad days, and she had bad days several times during the week. (Tr. 20.) He then found she met the first prong of the *Cotton* test (her medically established impairments could reasonably cause the alleged symptoms), but her statements were "not entirely credible." To support this finding, he explained which evidence undermined her testimony.

Specifically, he cited record evidence of her daily activities (mowing the lawn, household chores, walking a mile, painting, driving, socializing) and found these activities "were not consistent with [her] statements." (*Id*.) This is a legally sufficient reason for discounting credibility and is supported by her statements to examining physician Fred Price, D.O. (Tr. 302.)

---

[1] At the hearing she testified, "I used to be able to lift quite a bit of weight, and I can't lift even 40 pounds of dog food out of the trunk of the car anymore." She also stated some days it was difficult to lift a gallon of milk. (Tr. 459.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 7

The ALJ gave additional reasons for not fully crediting her statements. The reasons included personal observations of her treating physicians: her treating physicians did not rule out all work activities; her treating orthopedic surgeon, Thomas Kennedy, M.D.,[2] opined she could lift 25 pounds and should be able to do light work; Dr. Kennedy observed she had a "disability mind set"; in 2004, her treating physician, Wallace Donaldson, M.D., indicated she possibly could do cashier work; and examining orthopedic specialist Alfred Blue, M.D., opined Plaintiff could work with shoulder limitations. Dr. Blue also observed Plaintiff stated she could not work, suggesting a disability mind set and secondary gain issues. (Tr. 20, 193, 195-99, 319-21, 341, 351, 400.) These documented observations of examining and treating physicians are legally sufficient, "clear and convincing" reasons to discount Plaintiff's pain testimony. *Light*, 119 F.3d at 792. The ALJ's credibility determination was based on more than a lack of objective medical evidence and is supported by substantial evidence.

**B.   ALJ's Duty to Develop the Record**

Plaintiff asserts that remand is necessary to obtain additional testing as recommended by her examining and treating physicians. (Ct. Rec. 15 at 14.) Treatment notes from April 2002 by her treating orthopedic surgeon, Dr. Kennedy, indicate a MRI showed AC joint arthrosis and impingement syndrome of the right shoulder and possible rotator cuff tear. Surgery was scheduled for shoulder

---

[2] The opinions of medical specialists about medical issues related to their area of speciality are given more weight than physicians who are not specialists. 20 C.F.R. § 404.1527(d)(5).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 8

decompression and, if necessary, repair of the rotator cuff tear. (Tr. 17, 212-16.) In January 2003, a second shoulder arthroscopy was performed to relieve adhesive capsulitis in the right shoulder. (Tr. 211.) In November 2003, Plaintiff saw Dr. Kennedy for a follow up of the second surgery. (Tr. 193.) Dr. Kennedy noted her shoulder surgery was well-healed, but Plaintiff continued to complain of pain in her shoulder and newly complained of recurrent hand numbness. (Tr. 193.) Dr. Kennedy reported Plaintiff's carpal tunnel release in August 2002 had had excellent results, with a complete resolution of symptoms. He recommended further physical therapy and expressed concern about secondary gain issues around her return to work. However, because of Plaintiff's new symptom complaints, he recommended an evaluation by a hand specialist. (Tr. 17, 193-94.)

In January 2004, Dr. Donaldson referred Plaintiff to neurologist Peter Gilmore, M.D., for an evaluation of her right hand numbness. (Tr. 222.) Dr. Gilmore noted Plaintiff had had a MRI scan of her shoulder in 2002, followed by two separate surgeries. Nerve conduction tests performed by Dr. Gilmore in January 2004 were normal, with no evidence of carpal tunnel syndrome on either side. (Tr. 220-21.) Dr. Gilmore recommended a MRI scan of the cervical spine, to be ordered by Dr. Donaldson. (Tr. 219, 317.) In July 2004, Dr. Donaldson reported there was continued delay in getting authorization for the recommended MRI. (Tr. 226.) Plaintiff argues the Commissioner had a duty to order an MRI because it was recommended by Dr. Gilman and Dr. Donaldson (upon Dr. Gilman's recommendation).

In Social Security proceedings, the burden of proof is on the

claimant to prove the existence of a severe impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 404.1508. As a threshold to establishing an impairment, it is the claimant's responsibility to produce sufficient objective medical evidence of underlying impairment to show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton*, 799 F.2d 1403.

Once medical evidence is provided by the claimant, the Regulations state the agency "will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 404.1512 (d). An ALJ's duty to develop the record further is triggered "only when there is ambiguous evidence or when the record is inadequate for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir. 2001) *(citing Tonapetyan v. Halter),* 242 F.3d 1144, 1150 (9th Cir. 2001)). To further develop the record, the Commissioner may order consultative examinations at the agency's expense. However, the Commissioner has "broad latitude in ordering a consultative examination," *Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Consultative exams are purchased to resolve a conflict or ambiguities "if one exists." 20 C.F.R. § 404.1519a(2). There must be sufficient objective evidence in the record to suggest the "existence of a condition which could have a material impact on the disability decision." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997.)

Here, there are neither ambiguities nor conflicts in the medical evidence regarding Plaintiff's history and complaints of carpal tunnel syndrome. Further, the record contains evidence that Plaintiff was seen by specialists, as recommended by Dr. Kennedy. Specifically, Plaintiff was sent to an orthopedic hand surgeon, Dr. Blue, for evaluation and recommendation in May 2004, after she was referred to Dr. Gilmore.[3] (Tr. 314-21.) Dr. Blue reviewed the entire record and personally examined Plaintiff. He found no significant limitations in Plaintiff's gripping during rapid, repeat gripping tests. (Tr. 319.) Contrary to Dr. Gilmore's suggestion in January 2004, Dr. Blue concluded no further testing was needed, stating that further imaging "may find some abnormalities but the neurological examinations do not show any objective evidence of a nerve root compression." (Tr. 320.) Dr. Blue accepted the diagnoses of right shoulder sprain and bilateral carpal tunnel syndrome, but noted symptom magnification in the examination and Dr. Kennedy's concerns regarding secondary gain. He concluded the right shoulder had reached maximum improvement and "the carpal tunnel syndrome which has been previously accepted are [sic] clinically not present nor with an EMG/nerve conduction study." (Tr. 319-20.) Regarding Plaintiff's ability to return to work, the hand specialist stated:

---

[3] On independent review, it is noted that neurologist Dr. Gilmore saw Plaintiff two times, once for evaluation and once for nerve conduction tests. (Tr. 219-24). Therefore, he is considered an examining physician, whose opinions are given less weight than those of Dr. Kennedy, a treating specialist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 11

"The restriction of returning the patient to work is the patient's own conviction of disability and the patient's limited education." *(Id.)* Dr. Blue also evaluated possible jobs that Plaintiff could perform and, based on objective findings, opined Plaintiff could perform work that did not require overhead work or complete shoulder work. He also noted, "Based on [Plaintiff's] conviction she would not be able to do any of the jobs." (Tr. 321.) In June 2004, Dr. Blue was requested to re-evaluate the jobs based solely on objective findings. (Tr. 357.) His responsive second set of job analyses indicated Plaintiff was capable of performing work as a photo technician, photographer, customer service representative, and restaurant hostess. (Tr. 358-61.)

In August 2005 (after Plaintiff's period of disability expired), Plaintiff was examined again by orthopedic surgeon, David Whitney, M.D. (Tr. 362-70.) Plaintiff was complaining of numbness and tingling in both hands and pain and stiffness in the right shoulder. (Tr. 363.) After an interview and detailed review of the records, Dr. Whitney conducted a complete exam. He noted lack of full effort bilaterally with grip testing, no evidence of impingement of the right shoulder, and normal "two-point discrimination of both hands." (Tr. 368.) Based on his examination and prior repeat nerve conduction tests, he found no evidence of permanent partial impairment of either wrist or hand. (Tr. 369.) He opined no further testing was needed. (Tr. 367-69.) He also questioned the validity of right shoulder limitations demonstrated by Plaintiff during the examination. (Tr. 370.)

The ALJ did not err in relying on the orthopedic specialists consulted after Dr. Kennedy recommended Plaintiff be referred to a

hand specialist. It is within the Commissioner's authority to determine how to resolve conflicting medical issues. Further, it was reasonable for the ALJ to rely on the opinions of Drs. Kennedy Blue and Whitney, all of whom were orthopedic specialists, in his consideration of the evidence and final determination. The fact that Dr. Gilmore suggested a MRI where nerve conduction tests revealed no carpal tunnel syndrome, does not warrant more weight than the opinion of Dr. Kennedy, that Plaintiff should consult with a hand surgeon, and the opinions of examining orthopedic specialists, that no further testing was needed to properly evaluate Plaintiff's hand condition. *See* 20 C.F.R. § 404.1527(d)(5) (more weight given to opinions of specialist about issues related to his/her area of speciality).

The ALJ's resolution of the conflicting medical opinions regarding the need for additional testing is reasonable and fully supported by the record. The ALJ did not have a duty to order an additional MRI.

**C.   Step Five: Hypothetical Question**

At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). At step five, the hypothetical posed to the VE must accurately reflect the claimant's impairments. *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988); *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1990). Plaintiff argues the ALJ erred when he presented a hypothetical question to the VE that did not include Plaintiff's need for unscheduled breaks and problems

carrying things without dropping them. (Ct. Rec. 15 at 18.) However, an ALJ does not have to accept as true the limitations propounded by a claimant's counsel if those limitations are not supported by the record. *Martinez v. Heckler*, 807 F.2d 771 (9th Cir. 1986); *see Osenbrock v. Apfel,* 240 F.3d 1157, 1163-64 (9th Cir. 2001).

The hypothetical posed to the VE is as follows:

> Her last grade in school was the ninth. There are no mental health limitations. The individual is right handed. Now you should know that sitting, standing and walking, and performing basic work activities are essentially unrestricted. Bending, stooping, kneeling can be done at least occasionally. Use of the nondominant left upper extremity is essentially unrestricted. But there are restrictions post surgically on the dominant right arm as follows. With that arm she could frequently lift or carry no more than 10 pounds, or occasionally handle on the right upper extremity no more than about 20 pounds. But she has limited reaching overhead and, and generally in all directions with the right upper extremity. And you should also assume that while range of motion of the right wrist is intact, she would present at work with some diminished gripping strength on the right. She may even drop things from time to time with occasional use of the right hand. With regard to her vision and hearing, there are no restrictions. That is intact and normal.

(Tr. 465-66.)

The VE testified in detail that the hypothetical individual could perform two specific jobs that existed in significant numbers in the national economy, and as listed in the DICTIONARY OF OCCUPATIONAL TITLES (DICOT): charge account clerk and call-out operator. (Tr. 467.) He also testified there were other identifiable jobs, but the ALJ considered these two jobs sufficient for step five purposes. (*Id.*) One occupation that exists in the national economy is sufficient to support a finding that a claimant is not disabled. 20 C.F.R. §§ 404.1566(b). During his testimony, the VE specifically

referenced the DICOT definitions and opined as to how the jobs were typically performed. (Tr. 468-69); *See Osenbrock,* 240 F.3d at 1164-65; *SSR* 00-4p. In response to the representative's questioning, the VE opined the hypothetical individual could perform the call-out operator job even if it required finger and manual dexterity for computer work. (Tr. 470.)

There is no evidence, other than Plaintiff's self-report, that Plaintiff needed unscheduled rest periods and had problems carrying objects with her right hand. As discussed above, the ALJ gave "clear and convincing reasons" for discounting Plaintiff's allegations of disabling pain and fatigue, including her need to lie down at unpredictable times during the day and that she drops things when carrying them on her right side. (Tr. 20.) As stated in the ALJ's findings, her treating and examining physicians, including orthopedic specialists, opined she could perform light work with right shoulder restrictions. (*Id.;* Tr. 195, 304-05, 321, 368-95.) These opinions were based on objective findings, physician observations and physical exam.[4] The record in its entirety does not support additional limitations propounded by Plaintiff's representative; therefore, the ALJ did not err in excluding them from his hypothetical. The ALJ properly relied on VE testimony

---

[4] Plaintiff's objections to weight given Dr. Fred Price's examining opinion are based on the physician's misstatement regarding the number of MRI's in the record. (Ct. Rec. 15 at 15; Tr. 299.) However, Dr. Price's final opinions are supported amply by his thorough physical examination, range of motion testing, and report and by other medical evidence in the record. (Tr. 298-309.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 15

because the hypothetical included all limitations supported by the record.

It is well settled that the ALJ is "responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities," in these proceedings. *Richardson,* 402 U.S. at 400; *Andrews*, 53 F.3d at 1039; *SSR* 96-8p. Where, as here, the ALJ's determination is a rational interpretation of the evidence in its entirety, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Curry v. Sullivan,* 925, F.2d 1127, 1131 (9th Cir. 1990).

## CONCLUSION

The ALJ's findings are supported by substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **DENIED**.

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 17)** is **GRANTED**.

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED January 8, 2009.

                    S/ CYNTHIA IMBROGNO
              UNITED STATES MAGISTRATE JUDGE